Bissell, J.,
delivered the opinion of the court.
This suit was originally brought in the county court of Arapahoe county by Mrs. Waters against Coe Bros., because of a transaction which she had with that firm. The case went by appeal to the district court, where it was again tried, and in both cases the judgment went against the appellants. The appeal, as argued by counsel, is based on one principal error concerning the form of the action and the method of trial, with some other collateral matters, which may be very briefly disposed of. Omitting whatever is unessential to an apprehension of the contention, the ease is briefly this: Mrs. Waters was the owner and in possession of a restaurant, which she valued at about $1,200. The question of value is of no particular consequence. It was mortgaged for $350, and the notes which the security covered were due and unpaid. Mrs. Waters was unable to raise the money to liquidate the indebtedness, and went to Coe Bros., who were brokers and dealers in real estate and such securities, to make some arrangement for the disposition of the mortgaged property. At this time Coe Bros., according to their statements, held the notes for collection. Some interviews had been had between the parties with reference to the paper, which culminated in the transaction about which Mrs. Waters complains. At about the time of the interview with Coe Bros., one Fuller was a prospective purchaser of the restaurant and its fixtures, and he offered, according to her claim, to assume the incumbrance and to pay an additional consideration for the transfer. This was to be paid by a deed on certain property in Topeka, which Fuller owned. Mrs. Waters insists that she counseled with the Coe Bros, with reference to the expediency of this transaction, who *205 advised her to reject the offer, on the basis of a probability that they would be able to dispose of it, if it was placed in their hands, at a better figure. This was accordingly done, and she left the property with them for such trade or sale as they might be able to make. Shortly afterwards the Coe Bros, attempted to foreclose the mortgage on the property, and, in execution of their purpose, took possession of it, stating, as Mrs. Waters says, that they were unable to make any sale or other disposition of the property. Being otherwise unable to settle the claim which they held, she made no objections to the proceedings in foreclosure which they took. There is some little controversy about that, but it is of no moment. At all events, within a day or two of the time when they took possession under their security, Fuller went into control. He seems, according to the evidence, to have made the same identical trade with the Coe Bros, that he had offered to Mrs. Waters. In other words, he assumed the incumbrance, agreed to take care of the notes, took them up with his own paper, and deeded to one of the firm the property in Topeka. When Mrs. Waters learned of this, she insisted on some adjustment with the firm, and that their conduct was in bad faith and in derogation of her rights and in violation of their obligations as her agents, which position they had assumed in the matter. The case has been stated according to Mrs. Waters’ contention, though none of the facts essential to her recovery were admitted, but were strenuously denied by the parties who were connected with it. Since the case has been twice tried, and once by a juiy, and on both occasions the findings were adverse to the appellants, we must assume the plaintiff’s case to have been made out and those facts as to which she offered evidence, which were • essential to her recovery, to have been sufficiently established by proof. Bringing her suit on this basis, she stated the case generally in her complaint and originally prayed for the recovery of what she alleged to be the value of the property, to wit, |1,200, and also to compel the Coe Bros, to deed to her the Topeka lots. In other words, her prayer was in the *206 alternative, and would seem to be for equitable relief. In the county court, however, the latter part of the prayer was eliminated, and she sought to recover only what would be damages for the injury. The appellants contended the action to be one in equity, objected to the calling of the jury and the submission of the issue to them for a verdict. It was insisted the court had no power to submit the cause generally, but, while it had a right to impanel a jury to try any question of fact, it was powerless to call for a general verdict, or to do otherwise than take it as advisory, and render thereon such judgment as the couz’t should conclude was proper.
Possibly the complaizzt is somewhat inartistic, and in its form and allegations lends some support to the appellants’ contention. We do not, however, concede that the facts as stated or the case as made was one which of necessity was equitable in its character. In other words, the plaintiff possibly had the zúght to bring her action and treat the transaction as having been done in her favor and on her behalf, to affirm it and compel the Coe Bros, to account for the value of the property or invest her with the title. The complaint was not aptly conceived for this purpose, nor was it the evident design of the pleader. In reality the action took the ■forzn of one for deceit, and a recovery was had for the alleged fraudulent character of the Coe Bros.’ acts while they were attempting to discharge for Mrs. Waters the duties of an agezzt in the premises. It therefore follows the cozzrt was zzot in error in submitting the question to the jury and permitting them to return a general verdict in the premises. The case of Hulley v. Chedic, 36 Pac. Rep. 783, from Nevada, which is so largely relied orz by appellants’ counsel, is inapplicable to the present case, and we do not intend to express an opiziion as to the rule which that court has declared. It was undoubtedly there held that where the action is one of purely equitable cognizance, the court cannot submit the issues to a jury, take a verdict and render judgment as in a law action. The case, however, was purely an equi *207 table one, for it was an attempt to follow money which had been paid by a debtor who was garnisheed to a third person, to whom a judgment had been assigned with an intent on the part of the assignor to defraud his creditors. The court held that garnishment created no lien on the money, but, to follow it into the hands of the person who had received it, the party must establish the alleged fraud, attack the transfer, and by decree compel the assignee to pay over the money which the creditor had attempted to reach by his garnishment proceedings. Of course, in a case of this description, an action at law would not lie against the assignee, nor could a money judgment be properly entered against her. There is no analogy between the two cases. It was based on what was alleged to be a fraud or wrong done by the agents in the transaction of the business of their principal, whereby injury came to the principal, for which an action would lie. In a case of this sort, not only could a money judgment be had, but it could properly be enforced if the verdict should be found against the wrongdoers. Whether, in any suit under our system of practice, this would be a substantial error requiring the reversal of the case, is a question of some gravity. Our supreme court, in one of the cases which will be hereafter cited, has gone to a very considerable length in the application of the statute which forbids the appellate courts to reverse a case where the error complained of has worked no substantial injury to the parties. We do not decide whether the case is-absolutely within the scope of the decisions, but it certainly approaches it. The entry of the judgment might be taken to be the conclusion of the court on the facts, since it was necessarily entered after a motion for a new trial had been overruled. The other conclusion, however, is so entirely satisfactory, we do not attempt to protect the judgment by the application of what is usually found to be a very satisfactory rule.
There are several other errors assigned and argued in the brief, based principally on the instructions. The objéetions to the charge were with reference to two paragraphs of it. *208 These are probably sufficiently definite to be the basis of assignments of error, but they are so completely separated from the balance of the charge that we are quite able to say the appellants were not harmed by them. Thej' may be in some respects technically erroneous, and they may have been given respecting some matters which could well have been taken away from the consideration of the jury. In the main, however, the charge was entirely correct, and on the principal and only question, to wit, the good faith of the Coe Bros., was a fair statement of the law, and left this issue to the jury. Errors of this desciiption have been repeatedly adjudged insufficient to reverse a judgment, if the verdict of the jury is accepted, and the case has been fairly tried and substantial justice has been thereby done between the parties. We are unable to conclude otherwise, and consider the case fairly within the scope of this principle. Patrick Red Sandstone Co. v. Skoman, 1 Colo. App. 323 ; Salazar v. Taylor, 18 Colo. 538 ; Williams v. Williams, 20 Colo. 51.
These considerations dispose of all the matters which are presented to our attention, and, finding nothing in the record to warrant any other result, we affirm the judgment.

Affirmed.